IL-103-ARB 1/1/2020

# RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Chicago Car Center Inc. | LISA M SIMONS | No. 117016 |
| 2218 S Cicero Ave | ▮▮▮▮▮▮▮▮ | Date 01/02/2021 |
| Cicero, IL 60804 | Addison, IL 60101 | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of |
| 24.99 % | $ 14,807.11 | $ 25,263.05 | $ 40,070.16 | $ 1,200.00 |
| | | | | $ 41,270.16 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 104 | $ 385.29 | Bi-Weekly   beginning 01/16/2021 |
| | $ | with final payment due on   12/28/2024 |
| | $ | |

**Security.** You are giving us a security interest in the Property purchased and Wage Assignment.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the payment due on installments in excess of $200.00 or $10.00 on installments of $200.00 or less.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2013 | Toyota | RAV4 | XLE Sport Utility 4D | 2T3RFREV5DW095347 | 131859 |

Other:

☐ New
☒ Used
☐ Demo

### FOR USED VEHICLES ONLY

**Illinois law requires that this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.**

**ATTENTION CONSUMER: SIGN HERE ONLY IF THE SELLER HAS TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM OR PROBLEMS AND YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**
**ATENCIÓN CONSUMIDOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y USTED ESTA DE ACUERDO EN COMPRAR EL VEHÍCULO SEGÚN ESTOS TÉRMINOS:**

1. LISA M SIMONS   2. _____   3. _____ N/A

X _____ 01/02/2021   X _____ 01/02/2021   X _____ N/A
Buyer Signs   (Date)   Buyer Signs   (Date)   Buyer Signs   (Date)

Retail Installment Contract-IL Not for use in transactions secured by a dwelling.
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RS3IMVLFAZIL 1/1/2020
Bankers Systems®
Page 1 of 7

## Description of Trade-In

N/A

N/A

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ 25,263.05 _____ plus finance charges accruing on the unpaid
balance at the rate of _____ 24.99 _____ % per year from the date of this Contract
until maturity. After maturity, or after you default and we demand payment, we will charge
finance charges on the unpaid balance at _____ 24.99 _____ % per year. You agree to
pay this Contract according to the payment schedule and late charge provisions shown in
the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to
the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of
this Contract, any cash, rebate and net trade-in value described in the *Itemization of
Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Additional Charge.** You agree to pay an additional charge of
$ 0.00 _____ that will be  ☐ paid in cash.
☐ financed over the term of the Contract.

**DOCUMENTARY FEE.** ☒ You agree to pay a documentary fee of
$ 294.65 _____
DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A
DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS
FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A
SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2020, WAS $300.
THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE
BASE DOCUMENTARY FEE OF $300, WHICH SHALL BE SUBJECT TO AN ANNUAL
RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF
LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding
securing financing ("*Agreement*") applies: _____ N/A _____. The Agreement is part of this Contract. The
Agreement will no longer control after the assignment is accepted. If there are any
conflicts between the terms of the Agreement and the Contract, the terms of this Contract
will apply.

*[This area intentionally left blank.]*

## Itemization of Amount Financed

| | | |
|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 1,728.40 ) | $ 19,627.40 |
| b. | Service Contract, paid to: UR Boss LLC | $ 2,080.00 |
| c. | **Cash Price** (a+b) | $ 21,707.40 |
| d. | Trade-in allowance | $ 0.00 |
| e. | Less: Amount owing, paid to (includes m): N/A | $ 0.00 |
| f. | Net trade-in (d–e; if negative, enter $0 here and enter the amount on line m) | $ 0.00 |
| g. | Cash payment | $ 1,200.00 |
| h. | Manufacturer's rebate | $ 0.00 |
| i. | Deferred down payment | $ 0.00 |
| j. | Other down payment (describe) N/A | $ 0.00 |
| k. | **Down Payment** (f+g+h+i+j) | $ 1,200.00 |
| l. | **Unpaid balance of Cash Price** (c–k) | $ 20,507.40 |
| m. | Financed trade-in balance (see line f) | $ 0.00 |
| n. | Paid to public officials, including filing fees | $ 0.00 |
| o. | Insurance premiums paid to insurance company(ies) N/A | $ 0.00 |
| p. | Optional ERT Fee Paid to | $ 0.00 |
| q. | To: Documentary Fee | $ 294.65 |
| r. | To: GAP | $ 0.00 |
| s. | To: Title and License Fees | $ 301.00 |
| t. | To: Misc Other Charges | $ 0.00 |
| u. | To: Umbrella Waiver | $ 4,160.00 |
| v. | To: Smog Fee | $ 0.00 |
| w. | To: N/A | $ 0.00 |
| x. | To: N/A | $ 0.00 |
| y. | To: N/A | $ 0.00 |
| z. | **Total Other Charges/Amts Paid** (m thru y) | $ 4,755.65 |
| aa. | **Prepaid Finance Charge** | $ 0.00 |
| bb. | **Amount Financed** (l+z–aa) | $ 25,263.05 |

We may retain or receive a portion of any amounts paid to others.

*[This area intentionally left blank.]*

Retail Installment Contract-IL Not for use in transactions secured by a dwelling.
©2020The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFAZIL 1/1/2020
Bankers Systems®
Page 2 nf 7

Case 21-08046    Doc 70-1    Filed 04/02/22    Entered 04/02/22 11:52:26    Desc Exhibit
DocuSign Envelope ID: FC765ADF-AB4F-4DB0-ADBB-63F6880C07C2
Loan Documents    Page 3 of 8

117016

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☒ None
Premium $ 0.00 _____ Term ___ 0 ___ Months
Insured N/A

**Credit Disability**

☐ Single  ☐ Joint  ☒ None
Premium $ 0.00 _____ Term ___ 0 ___ Months
Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

DocuSigned by:

_[signature]_
20F7E052D00745C

01/02/2021
By: LISA M SIMONS                    Date

_____ 01/02/2021
By:                                  Date

_____N/A_____
By:                                  Date

**Property Insurance.** You must insure the Property. **You may purchase or provide the insurance through any insurance company reasonably acceptable to us.** The collision coverage deductible may not exceed $ ____N/A____ . If you get insurance from or through us you will pay $ ____N/A____ for ____N/A____ of coverage.

This premium is calculated as follows:

☐ $ ___N/A___ Deductible, Collision Cov.     $ ___N/A___
☐ $ ___N/A___ Deductible, Comprehensive     $ ___N/A___
☐ Fire-Theft and Combined Additional Cov.    $ ___N/A___
☐ N/A                                        $ ___N/A___

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.**

_[This area intentionally left blank.]_

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**
Term _____ Months  or  _____ Miles
Price              $ 2,080.00
Coverage           See Terms on Separate Agreement

☐ **Gap Waiver or Gap Coverage**
Term               48      Months
Price              $ 0.00
Coverage           See Terms on Separate Agreement

☒ **Umbrella Waiver**
Term               48   Months
Price              $ 4,160.00
Coverage           See Terms on Separate Agreement

DocuSigned by:

_[signature]_
20F7E052D00745C

01/02/2021
By: LISA M SIMONS                    Date

_____ 01/02/2021
By:                                  Date

_____N/A_____
By:                                  Date

## Additional Terms of the Sales Agreement

**Definitions.** "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "you" and "your" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the Description of Property section. "Property" means the Vehicle and all other property described in the Description of Property and Additional Protections sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "Total Sale Price" is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the Truth-In-Lending Disclosure assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

Retail Installment Contract-IL Not for use in transactions secured by a dwelling.
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

DS
_[signature]_
RSSIMVLFAZIL 1/1/2020
Bankers Systems®
Page 3 of 7

Case 21-08046   Doc 70-1   Filed 04/02/22   Entered 04/02/22 11:52:26   Desc Exhibit
DocuSign Envelope ID: FC765ADF-AB4F-4DB0-ADBB-68F6636Q075E
Loan Documents   Page 4 of 8

117016

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Illinois and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if the following occurs (except as prohibited by law):

♦ You fail to perform any obligation that you have undertaken in this Contract.

If you default, you agree to pay our fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees incurred in the collection or enforcement of the Contract. If a judgment is entered against you, you will pay any court costs the court awards us.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Right to Reinstate.** If you have paid an amount equal to 30% or more of the Total of Payments or Total Sale Price at the time of repossession, you may, within 21 days, reinstate this Contract and redeem (get back) the Property from us by tendering in a lump sum (a) the total of all unpaid amounts, including any unpaid delinquency or deferral charges due at the time of reinstatement, without acceleration; (b) performance necessary to cure any default other than nonpayment of the amounts due; and (c) all reasonable costs and fees incurred by us in relaxing, holding, and preparing the Property for disposition and in arranging for the sale of the Property. Tender of payment and performance pursuant to this limited right of reinstatement restores to you your rights under this Contract as though no default had occurred. However, you have the right to reinstate this Contract and recover the Property from us only once on this Contract.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract, subject to any right to reinstate that you may exercise as described in the *Right to Reinstate* section. Those remedies include:

♦ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

♦ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.

♦ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

♦ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

♦ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.

♦ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the Vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

♦ You must pay this Contract even if someone else has also signed it.

♦ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

♦ We may release any security and you will still be obligated to pay this Contract.

♦ If we give up any of our rights, it will not affect your duty to pay this Contract.

♦ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTIES SELLER DISCLAIMS**

**If the vehicle you purchased is a new vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.**

**If the vehicle you purchased is a used vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no express warranties on the vehicle, and there will be no implied warranties of fitness for a particular purpose. The vehicle is subject to an implied warranty of merchantability, but only to the extent required by Illinois law. The Implied warranty of merchantability expires at midnight of the 15th calendar day after delivery of the vehicle or until the vehicle is driven 500 miles after delivery, whichever is earlier. This implied warranty of merchantability does not extend to damage that occurs after the sale that results from: (1) off-road use; (2) racing; (3) towing; (4) abuse; (5) misuse; (6) neglect; (7) failure to perform regular maintenance; and (8) failure to maintain adequate oil, coolant, and other required fluids or lubricants.**

The above provisions do not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Used Car Buyers Guide**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

♦ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

♦ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.

♦ You agree not to remove the Property from the U.S. without our prior written consent.

♦ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

♦ You will pay all taxes and assessments on the Property as they become due.

♦ You will notify us with reasonable promptness of any loss or damage to the Property.

♦ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

Retail Installment Contract-IL Not for use in transactions secured by a dwelling.
©2020The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFAZIL 1/1/2020
Bankers Systems®
Page 4 of 7



**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Arbitration Provision

**PLEASE READ CAREFULLY! By agreeing to this Arbitration Provision you are giving up your right to go to court for claims and disputes arising from this Contract:**

- ♦ **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.**
- ♦ **YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.**
- ♦ **IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.**

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. "Claim" means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

The party electing arbitration may choose either of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association (www.adr.org) or JAMS (www.jamsadr.com), or they may choose any other reputable arbitration organization and its rules to conduct the arbitration, subject to the other party's approval. The parties can get a copy of the organization's rules by contacting it or visiting its website. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the terms of this Arbitration Provision will govern the Claim. However, to address a conflict with the selected arbitration organization's rules, the parties may agree to change the terms of this Arbitration Provision by written amendment signed by the parties. If the parties are not able to find or agree upon an arbitration organization that is willing and able to handle the arbitration, then the arbitrator will be selected pursuant to 9 U.S. Code Sections 5 and 6.

The arbitration hearing will be conducted in the federal district where you reside unless you and we otherwise agree. Or, if you and we agree, the arbitration hearing can be by telephone or other electronic communication. The arbitration filing fee, arbitrator's compensation and other arbitration costs will be paid in the amounts and by the parties according to the rules of the chosen arbitration organization. Some arbitration organizations' rules require us to pay most or all of these amounts. If the rules of the arbitration organization do not specify how fees must be allocated, we will pay the filing fee, arbitrator's compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more. Each party is responsible for the fees of its own attorneys, witnesses, and any related costs, if any, that it incurs to prepare and present its Claim or response. In limited circumstances, the arbitrator may have the authority to award payment of certain arbitration costs or fees to a party, but only if the law and arbitration organization rules allow it.

An arbitrator shall be a lawyer with at least ten (10) years of experience and familiar with consumer credit law or a retired state or federal court judge. The arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S. Code Sections 1, et seq. Any court having jurisdiction can enforce a final arbitration award. You and we agree that this Arbitration Provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

You or we can use the following without giving up the right to require arbitration: seek remedies in small claims court for Claims within the small claims court's jurisdiction, or seek judicial provisional remedies. If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This Arbitration Provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder of this Arbitration Provision will remain in full force and effect. The one exception is that if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Arbitration Provision will be unenforceable in its entirety.

**PROCESS TO REJECT THIS ARBITRATION PROVISION.** You may reconsider and reject your approval of this Arbitration Provision by sending a written notice to the Assignee (identified in the Assignment section) or if there is no Assignee, then to Seller. The notice must be postmarked within 30 days of the date you signed this Contract. It simply needs to state your decision to reject the Arbitration Provision in this Contract and include your signature. It must also provide your name, Seller's name and the date of this Contract. Rejecting this Arbitration Provision will NOT affect the terms under which we will finance and sell the Property to you or any other terms of this Contract, except that the Arbitration Provision will not apply.

**CAUTION: It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision. If you do not understand this Arbitration Provision, do not sign this Contract; instead ask your lawyer. If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described above. If you use that process to reject, this Arbitration Provision will not be a part of this Contract, but the rest of this Contract will still be binding and effective.**

*[This area intentionally left blank.]*

Retail Installment Contract-IL. Not for use in transactions secured by a dwelling.
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.



RSSIMVLFAZIL 1/1/2020
Bankers Systems®
Page 5 of 7

### Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.** 1. IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.

2. IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

### Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

N/A
_____

By: _____  Date _____

Signature of Third Party Owner (NOT the Buyer)

*[This area intentionally left blank.]*

# NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION UNLESS UMBRELLA WAIVER PURCHASED

*[This area intentionally left blank.]*

Retail Installment Contract-IL Not for use in transactions secured by a dwelling.
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.



RSSIMVLFAZIL 1/1/2020
Bankers Systems®
Page 6 of 7

## Arbitration Provision and Process to Remove

This Contract contains an Arbitration Provision that affects your rights. By signing this Contract, you agree that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

By initialing this section, you confirm that you read, understand and agree to the Arbitration Provision in this Contract, including the process to reject it.

Buyer initials: _____    _____

## Acknowledgment for Electronic Signatures

☒ Electronic Signature Acknowledgment. You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: LISA M SIMONS    Date 01/02/2021

By: _____    Date 01/02/2021

By: _____ N/A    Date

CO-BUYER. A co-buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the Vehicle or (2) is a parent or spouse of the Buyer or (3) will be listed as an owner on the Vehicle's title. By signing below, you confirm that you will actually receive possession of the Vehicle or will use it or that you are a parent or spouse of the Buyer or that you will be listed as an owner on the Vehicle's title, you agree to be primarily obligated under this Contract and you consent to the Seller having a security interest in the Vehicle.

**This instrument is pledged as collateral to CIBC Bank USA, as Administrative Agent**

*[This area intentionally left blank.]*

NOTICE TO THE BUYER. 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

### RETAIL INSTALLMENT CONTRACT

Buyer

By: LISA M SIMONS    Date 01/02/2021

By: _____    Date 01/02/2021

By: _____ N/A    Date

Seller

By: Chicago Car Center Inc.    Date 01/02/2021

Guarantor. A guarantor is a person who may be responsible for paying the entire debt if we cannot collect the amount owed from the buyer or any co-buyer.
Guarantor Signature:

_____    Date 01/02/2021

Address:

I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein. I also consent to the creditor having a security interest in the Vehicle.

Assignment. This Contract and Security Agreement is assigned to
Turner Acceptance Corp.    4454 N Western Ave.
Chicago, IL 60625
the Assignee, phone (773) 539-8900 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐ This Assignment is made with recourse.

Seller

By: Chicago Car Center Inc.    Date 01/02/2021

Retail Installment Contract-IL Not for use in transactions secured by a dwelling.
©2020 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
RSSIMVLFAZIL 1/1/2020
Bankers Systems®
Page 7 of 7

Case 21-08046   Doc 70-1   Filed 04/02/22   Entered 04/02/22 11:52:26   Desc Exhibit
DocuSign Envelope ID: FC765ADF-AB4F-4DB0-ADBB-61F6A3FCD76C   Loan Documents   Page 8 of 8

RIC101609

# WAGE ASSIGNMENT

| Cicero | IL | 01/02/2021 |
|--------|-------|-------------------|
| City | State | Date of Execution |

To Chicago Car Center Inc.

Seller (Assignee)

Amount of money loaned (Amount Financed)  $ 25,263.05  ; Rate of Interest (Annual Percentage Rate): 24.99

Equal payments in the amount of  $ 385.29  are due beginning 01/16/2021  . Upon default in the payment

of any said installments, then all unpaid installments shall, at the Assignee's option, become immediately due and payable without notice or demand.

As security for the above-described debt each of the undersigned hereby assigns, transfers and sets over to the above-named assignee, wages, salary, commissions, bonuses subsequently earned or to become due from his present employer for a period of three (3) years from the date hereof and from any future employer within a period of two (2) years from the date of execution hereof. **Any undersigned Debtor may revoke his assignment of wages at will by written notification to the holder.** This assignment shall remain effective as to all of the undersigned Debtor(s) not electing to revoke their assignment.

The amount that may be collected by assignee hereon shall not exceed the lesser of (1) 15% of the gross amount paid assignor for that week, or (2) the amount by which disposable earnings for a week exceed 45 times the Federal Minimum Hourly Wage prescribed by Section 206 (a) (1) of Title 29, U.S.C, or the minimum hourly wage prescribed by Section 4 of the Minimum Wage Law, whichever is greater, in effect at the time the amounts are payable; and shall be collected until the total amount due under this assignment is paid or until expiration of employees payroll period ending immediately prior to 84 days after service of the demand hereon, whichever first occurs. This Wage Assignment shall be valid for a period of three years from date hereof.

The term "disposable earnings" means that part of the earnings remaining after deduction of any amounts required by law to be withheld.

The assignor(s) hereby authorize, empower and direct his/their said employers(s) to pay to assignee any and all moneys due or to become due assignee(s) hereon, authorize assignee to receipt for the same and release and discharge employer from all liability to assignor(s) on account of moneys paid in accordance herewith. No copy hereof shall be served on employer(s) except in conformity with applicable law.

Each assignor acknowledges receipt of an exact copy of this wage assignment.

# WAGE ASSIGNMENT

| Present Employer | Social Security Number | Assignor / Wage-earner
LISA M SIMONS |
|------------------|------------------------|------------------------|
| Present Employer | Social Security Number | Assignor / Wage-earner |
| Present Employer | Social Security Number | Assignor / Wage-earner |

FOR VALUE RECEIVED, Undersigned does

hereby sell, assign, transfer, and set over to

Turner Acceptance Corp.

Its successors or assigns, all right, title, and interest in and to the within Wage Assignment and warrants that said Wage Assignment

was completely filled in, signed by the wage earner and an exact copy

thereof delivered to each signer thereof

SELLER

By:    ALEJANDRA ZAVALA